UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PAUL DUFRISNE,

    Petitioner,

  vs.

TOM L. CAREY, Warden,

    Respondent.
                                   /

No. C 01-4976 PJH (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and lodged exhibits with the court. Petitioner has responded with a traverse. The matter is submitted.

## BACKGROUND

Petitioner was convicted by a jury of first degree burglary, *see* Cal. Penal Code §§ 459-460(a); stalking, *see id.* § 646.9(a); and dissuading a witness by threat of force, *see id.* § 136.1(c)(1). The court found that petitioner's prior robbery was both a serious felony and a strike. *See id.* § 667 l(a), (b)-(i). He was sentenced to prison for fifteen years. As grounds for habeas relief, petitioner asserts that: (1) The prosecution committed misconduct when it failed to disclose an exculpatory tape recording to the defense; (2) the California Court of Appeal violated his Fourteenth Amendment rights when it refused to consider his pro se supplemental brief on direct appeal; (3) his appellate counsel was ineffective in failing to raise a sufficiency of the evidence issue and not raising several other issues; (4) the trial court violated his Fourteenth Amendment due process rights by trying him while he was incompetent; (5) the cumulative effect of several specified errors by the trial court, some of constitutional dimension, amounted to a due process violation; (6) there

was insufficient evidence to support the first degree burglary verdict; and (7) his appellate counsel was ineffective in failing to raise all these issues.

The following facts are summarized from the opinion of the California Court of Appeal. *See* Ex. 7 at 2-12.[1]

Petitioner lived off and on for approximately sixteen years with Kim Golden, a woman with whom he had been involved since high school and with whom he shared two children. Golden broke off the relationship while petitioner was in jail in 1993, but later gave into his harassing phone calls and threats to take away the children. She resumed cohabitating with him in March 1994. In June 1994, after petitioner indulged in a six to eight week bout of heavy drinking and drug use, Golden took the children and moved in with her mother.

Defendant was given permission to visit the children provided he was sober and not on drugs. Petitioner meanwhile devoted himself to a "jealous campaign" against Golden, and took to harassing her at her workplace, telephoning frequently, following her, sitting in his car in front of the house, tapping on her windows at night, disabling her vehicles, and arguing with her when she refused to allow him to enter the house. Golden awoke several times to find petitioner standing by her bed, watching her.

On June 16, Golden returned from work and found petitioner had broken into the house and gone through her drawers. A neighbor reported seeing him carry a grocery bag between the house and his car earlier in the day. Golden reported the incident to the Pittsburg police. Three days later, petitioner returned many of the items he had taken and began harassing her to drop the charges.

There was no expert testimony about petitioner's mental state at trial, but lay witnesses described his occasional bizarre behavior. Petitioner also interjected a few comments that the court of appeal concluded showed him to be clear thinking and engaged in the proceedings. *Id.* at 15.

---

[1] Unless otherwise indicated, citations to "Ex." are to the record lodged by the Attorney General.

Prior to sentencing, defense counsel declared petitioner was mentally incompetent and requested a psychiatric evaluation. The court found good cause, suspended sentencing, and appointed doctors Gloria Bentinck and Charles Noonan to examine him. Both found petitioner was not competent. Dr. Bentinck also concluded that petitioner was incompetent during trial and that at the time of the offense his mental condition made him "'unable to control his conduct to be in conformity with the law.'" *Id.* at 8. The judge suspended proceedings and ordered petitioner committed at the Atascadero State Hospital until he regained competency. He was later transferred to Patton State Hospital, and was certified as competent in late December. The judge accepted the certification.

Defense counsel moved for a new trial and asked to withdraw petitioner's not-guilty plea and enter a plea of not guilty by reason of insanity. He asserted that petitioner was mentally "absent" from his jury trial, and that this evidence was newly discovered and only came to the attention of the defense after the verdict. He also asserted petitioner "did not display symptoms of a mental illness which would cause an untrained person to reasonably suspect the level of his mental impairment." Defense counsel asserted that he only became aware of petitioner's condition after speaking with jurors and learning that petitioner had attempted to intimidate them, that he had held up notes during trial, and had acted in a bizarre fashion. He also stated jurors told him petitioner's behavior was "central to the[ir] findings of guilt, as they became afraid of [him]."

The trial judge denied the motions, stating that petitioner's conduct was observed "during the entire course of trial . . . and his behavior was no different than many different defendants who are in Court . . . ." The judge also found his "theatrics at the time that the verdict came in certainly was his reaction to what the jurors said in their verdict."

Defense counsel later renewed the motion for change of plea and the judge again denied it.

## DISCUSSION

**A.  Standard of review**

A district court may not grant a petition challenging a state conviction or

3

sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th

4

Cir.2000).

**B.     Issues Presented**

   **1.     Brady Violation**

Petitioner's first claim is that the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose exculpatory evidence in the form of a tape recording of three telephone calls made by petitioner to Kim Golden. The recordings consisted of petitioner rambling to Golden that he needed and wanted to see her. RT (5/3/1995) at 3. The prosecution did not turn over the tape until the second day of trial, when Cindy Golden testified to its existence. The prosecution did not rely on the recorded calls or in any way use the tape, claiming that "there is really nothing exculpatory or inculpatory about that tape in and of itself." *Id.*

In *Brady* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 676 (1985).

Petitioner admits that the tape "was not of great value." Pet. Traverse at 4. He instead argues that the prosecution's failure to disclose the tape is suggestive of the prosecution's willful violation of state disclosure rules. *Id.* However, violation of state law is not grounds for federal habeas relief, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and willfulness is irrelevant to whether there was a *Brady* violation, *Brady*, 373 U.S. at 87.

Petitioner also argues that the tape shows he "made no threatening or otherwise inappropriate phone calls that night . . .," and that "petitioner did not get out of line with [Kim Golden's] mother during the calls . . . ." Traverse at 12. As is evident from these arguments, the tape had little evidentiary value, which no doubt is why when it finally was turned over by the prosecution, the defense conceded that it was not exculpatory and

5

asked that it be excluded from evidence. RT (5/3/1995 ) at 5. Because the tape had so little evidentiary value, the prosecution's failure to turn it over to the defense earlier does not undermine the court's confidence in the outcome. Petitioner's rights thus were not violated, so the state court's rejection of this claim was not contrary to or an unreasonable application of, clearly established United States Supreme Court authority.

### 2.    Failure to Consider Pro Se Supplemental Brief on Appeal

In his second claim petitioner argues that the California Court of Appeal violated his due process rights by refusing to allow him to file a pro se brief supplemental to that of his appointed lawyer.

Defendant is correct that some courts have allowed "hybrid representation" and considered both a brief submitted by appointed defense counsel and a defendant's pro se supplemental brief, but nothing in these cases suggests that there is a constitutional right to such hybrid representation, as opposed to it being a matter of grace on the part of the appellate court. *See, e.g., Hoggard v. Purkett*, 29 F.3d 469, 472 (8th Cir. 1994) (appellate courts may "gratuitously consider" a petitioner's pro se supplemental brief); *Hayes v. Hawes*, 921 F.2d 100, 101-02 (7th Cir. 1990) ("nothing precludes an appellate court from accepting the pro se brief").

Although the United States Supreme Court has determined that there is no constitutional right to self-representation on appeal, *Martinez v. Court of Appeal*, 528 U.S. 152, 160-64 (1999), it has not considered whether there is a right to hybrid representation, such as petitioner asserts here. No doubt the answer is obvious, but in any event the absence of Supreme Court authority is fatal to petitioner's claim: He cannot show that the rejection of this claim by the state courts was contrary to, or an unreasonable application of, clearly established United States Supreme Court authority.

### 3.    Competency

Petitioner argues his due process rights were violated because he was tried and sentenced while incompetent to assist in his defense. The only evidence to support this argument comes from Dr. Gloria Bentinck's examination of petitioner after the verdict and

before sentencing. Dr. Bentinck and her colleague, Dr. Noonan, had agreed that petitioner was not *then* competent, but of course this does not establish whether he was competent at trial or at the subsequent sentencing. Only Dr. Bentinck offered the opinion that petitioner had been incompetent at trial, and only opined that he had been suffering from mental difficulties at the time of the crimes. After the doctors agreed that petitioner was not then competent, he was sent to a state hospital, where after a time the doctors certified that he had regained competency. He was then sentenced.

A criminal defendant may not be tried unless he is competent. *Godinez v. Moran*, 509 U.S. 389, 396 (1993). The conviction of a defendant while legally incompetent violates due process. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994). A defendant is competent to stand trial if he or she has "sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and ha[s] a rational as well as factual understanding of the proceedings." *Chavez v. United States*, 656 F.2d 512, 518 (9th Cir. 1981).

A state court competency finding is a finding of fact. *Brewer v. Lewis*, 989 F.2d 1021, 1027 (9th Cir. 1993). Thus relief can be granted on this issue only if this court determines that the state court's finding was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2).

### A. Competency at Trial

In its opinion the California Court of Appeal stated:

> [In Defendant's] view, both appointed experts' concurring diagnoses of incompetency two months after the verdict combined with Dr. Bentinck's opinion of incompetency during the trial and Dr. Noonan's suggestion of head trauma as a possible cause[,] so strongly suggested lasting, preexisting incompetency, by expert evidence, that the judge could not properly rely on her lay observations of him during the trial to contradict it. Indeed, defendant argues the judge "did not even consider the psychiatric reports" in ruling and improperly elevated "outward" or "superficial" appearances over the expert testimony.

Ex. 7 at 12-13.

The California Court of Appeal held that the trial judge was within her discretion in

7

finding that petitioner was competent at trial. The evidence to the contrary was (1) Dr. Bentinck's opinion, based on an examination conducted long after trial, and (2) second-hand evidence from defense counsel, who stated that he interviewed several jurors after trial and learned that petitioner had been making "foolish gestures" at the jury, holding up notes to them, staring menacingly at them, and otherwise misbehaving. *Id.* at 10. The court rejected this, noting that the judge had seen petitioner's demeanor at trial, as the doctors had not, that the doctors did not have a transcript of the trial so could not consider that evidence, and that she "implicitly relied on her perceptions from the trial to weigh against the reports." *Id.* at 13. Because the judge had received expert opinion that petitioner had been incompetent at the hearing at the time originally set for sentencing, she had a baseline for her own observations comparing his conduct then with his conduct at trial. *Id.* at 13-14. The court of appeal also held that the trial court's conclusion that petitioner's "sudden theatrics" when the verdict was returned were caused by the verdict, not incompetence, was supported by the evidence; that the trial court was in a better position to judge such matters than an appellate court; and that Patton State Hospital's warning that "[petitioner] may exaggerate symptoms while in jail in order to evade criminal prosecution" supported the trial court's conclusion. *Id.* at 14-15.

*Maggio v. Fulford*, 462 U.S. 111 (1982) (per curiam), was a pre-AEDPA habeas case, but the analysis is instructive. In *Maggio* the petitioner had asked for a competency review by doctors on the morning of trial. *Id.* at 112. The trial court, relying largely on its observations of defendant and its conclusion that the late motion was an effort to avoid a joint trial, concluded that there was no need for a competency review. *Id.* at 113-16. The Supreme Court held that the trial court's observations were sufficient to render its conclusion as to that petitioner's competency "fairly supported by the record," the pre-AEDPA standard. *Id.* 117-18.

In this case the competency issue was not raised until after petitioner was convicted, timing which renders it even more suspect than the morning-of-trial motion in *Maggio*. In this case neither doctor observed petitioner at trial and neither had the opportunity to base

8

an opinion on petitioner's demeanor and actions at trial. "In doubtful cases . . . the power of observation often proves the most accurate method of ascertaining the truth . . . ." *Maggio,* 462 U.S. at 118 (citing *United States v. Oregon Medical Society*, 343 U.S. 326, 339 (1952)). The trial judge observed petitioner's behavior during the entire course of the trial. The judge noted that "his behavior was no different than from many different defendants." RT (03/28/1996) at 17. She also noted that his behavior shifted and he began to "act out" only after the verdict was in. RT (03/28/1996) at 17.

Petitioner contends that his bizarre and intimidating behavior towards the jury shows that he was incompetent. Traverse at 16. He appears to assert that any defendant who is disruptive and leaves notes intended to intimidate the witnesses and jurors must be incompetent and unable to stand trial. Although petitioner's actions were indeed bizarre, they do not demonstrate that he was unable to communicate with his counsel or understand the proceedings, which is a different matter.

As in *Maggio*, given the trial court's observations, the state courts' rejection of this claim was not "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340. Habeas relief will not be granted on this ground.

### B. Competency at Sentencing

In his memorandum of points and authorities in support of his petition, petitioner states his competency issue thus: "The trial court tried, convicted, and sentenced an incompetent defendant/petitioner of which it had no jurisdiction thereby violating due process." Pet'r P. & A. at 17.

An application for a federal writ of habeas corpus filed by a prisoner who is in state custody pursuant to a judgment of a state court must "specify all the grounds for relief which are available to the petitioner ... and shall set forth in summary form the facts supporting each of the grounds thus specified." Rule 2(c) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254. "'[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Rule 4

9

Advisory Committee Notes (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970). The brief reference to "sentenced" in the statement of this claim, without any further argument or elaboration, is insufficient to meet this standard.

In addition, although petitioner was found incompetent and proceedings were suspended after the jury reached its verdict prior to sentencing, petitioner was later found to be competent by a treatment team at Patton State Hospital, *after* which he was sentenced. The sentencing court's determination that he was competent thus was not "objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340.

For these reasons, habeas relief will be denied as to this claim.

### 4. Denial of Due Process

Petitioner contends that the trial court committed five "abuses of discretion" that "amount[] to a denial of due process." Pet. at 8A.

#### A. Due Process Violation at Sentencing

Petitioner argues that the trial court abused its discretion in failing to strike his prior strike conviction. The facts alleged do not rise to the level of a due process claim.

California's three strike and sentencing guidelines are matters of state criminal procedure. To merit federal habeas relief, petitioner must demonstrate that his imprisonment is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 506 (1994). Absent a showing of fundamental unfairness, a state's application of sentencing laws does not justify federal habeas relief. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). Petitioner's argument is simply a matter of the merits – that is, whether the sentencing court should have stricken the priors. This sort of disagreement with the sentencing court's judgment does not suffice to show fundamental unfairness.

Petitioner also presents a confusing claim that the sentencing court "failed to issue a writ" before resentencing, which he claims caused him to lose "good time" credit for time incarcerated prior to the resentencing. Because this claim is incomprehensible, he has

10

failed to show that it is grounds for federal habeas relief.

### B. Brady Violation

The second "abuse of discretion" which petitioner contends violated due process was that the court "allowed" the *Brady* violation discussed in the first section above. As the court has determined that there was no due process violation, this claim will not be discussed further.

### C. Jury Receipt of Information From Outside the Record

Petitioner argues that a juror overheard statements made by petitioner's father outside of the record that petitioner "had burned down or had threatened to burn down a house," and that exposure to such statements was highly prejudicial. Pet. at 19. He also alleges that the state court failed to adequately investigate the potential juror misconduct in violation of his due process rights. Pet. at 20.

In *Remmer v. United States*, 347 U.S. 227 (1954), the Supreme Court held that when "[i]n a criminal case, any . . . tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial. . . ." *Id.* at 229. The "presumption is not conclusive, but the burden rests heavily on the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id.* The *Remmer* court cited in support of its holding an 1892 case, *Mattox v. United States*, 146 U.S. 140 (1892), in which the Court stated: "[P]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Id.* at 142. The Ninth Circuit has characterized both these cases as being based on the Sixth Amendment right to jury trial, and has applied them in habeas cases. *See United States v. Dutkel*, 192 F.3d 893, 894-95 (9th Cir. 1999) (§ 2255 case; applying *Remmer*); *Caliendo v. Warden*, 365 F.3d 691, 695 (9th Cir. 2004) (§ 2254 case; applying *Maddox*).

In *Dutkel* the court made a sharp distinction between (1) jury tampering, which it defined as "an effort to influence the jury's verdict," and (2) other ex parte contacts with

jurors. *Dutkel*, 192 F.3d at 895-96. The *Dutkel* court held that the *Remmer* presumption remains applicable to tampering claims, but that subsequent Supreme Court cases had "overtaken" what it characterized as dicta in *Remmer* as to less-serious contacts. *Id.* at 895-96 & 895 n.1 (citing *United States v. Olano*, 507 U.S. 725, 729-30 (1993), and *Smith v. Phillips*, 455 U.S. 209, 212 (1982)).

*Caliendo* involved conversation during a break between jurors and a detective witness on matters unrelated to the trial. 365 F.3d at 692. The *Caliendo* court ignored *Dutkel* except for using it as a second citation for a definition of "possibly prejudicial." *Id.* at 697. Instead of the *Dutkel* distinction between jury tampering and other outside contacts, the *Caliendo* court treated all outside contact with jurors as subject to the same analysis unless de minimi, defined as not raising a "risk of influencing the verdict." *Id.* at 696-97.

Although it might seem at first blush that the two cases are incompatible, it is this court's duty to construe them as consistent if that is possible. Considered in that light, it is possible to reconcile them. The detective in *Caliendo* sat at the prosecution table and talked with three jurors for twenty minutes, not about the case, but in a manner which might cause them to identify with him and sympathize with his workload. *Id.* at 693. The contact thus was essentially a form of jury-tampering – the witness appeared to be attempting to influence the outcome by eliciting empathy and sympathy. Seen in that light, any implication in *Caliendo* that the presumption of prejudice and burden-shifting rule of *Maddox* applies to non-tampering contacts with jurors is dictum, and so does not contradict *Dutkel.*

The contact here was apparently inadvertent, one juror having overheard petitioner's father say that petitioner had burned down or tried to burn down a house. Ex. 18 at 1.[2] Petitioner's father apparently supported him, as the judge remarked that his outburst when

---

[2] The trial court's interview of the juror was not transcribed for use on appeal, but the Attorney General was able to get it transcribed and has filed it separately as Exhibit 18, attached to document number 21 in the file. Resp's Supplemental Points and Authorities and Notice of Lodging of Exhibit. The court appreciates the Attorney General's efforts in completing the record.

12

the verdict was returned was such that she could have held him in contempt. RT (3/28/06) at 17. It thus is clear that the contact was not jury tampering, but was the sort of inadvertent contact that does not trigger a presumption of prejudice. *See United States v. English*, 92 F.3d 909, 913-14 (9th Cir. 1996) (elevator encounter between juror and victims; no presumption).

The juror in this case accidentally overheard the comment during a smoking break. Ex. 18 at 1. The court promptly conducted a hearing and ample evidence supported its finding that the juror's exposure to the comments was harmless. The juror stated that he formed an opinion as a result of juror discussion during deliberations, and not as a result of the comment. Ex. 18 at 1. While the juror stated that the comment might make him "want to make sure that [proceedings go] through as it should," he also stated that the he would not tell the other jurors, and did not want the incident to affect the trial in any way. Ex. 18 at 2. He reiterated that his decision would only be based on what he heard in the courtroom and that his mind would remain open for further discussions with other jurors. Ex. 18 at 3.

Given this, petitioner's Sixth Amendment right to trial by jury was not violated. The state appellate courts' rejection of his claim was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### D. Stand-in Defense Counsel

Petitioner alleges that stand-in defense counsel was uninformed about the proceedings and was ineffective when resolving crucial jury questions, thereby denying him his Sixth Amendment right to counsel. P. & A. in Support of Pet. at 21.

A habeas petitioner claiming ineffective assistance of counsel must (1) demonstrate that his lawyer's representation was deficient, and (2) that the deficient representation prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To determine whether representation was deficient, a court must consider "whether counsel's assistance was reasonable considering all the circumstances at the time of the assistance." *Id.* at 688. A court's review of the adequacy of legal assistance is highly deferential, and there is a

13

strong presumption that counsel provides adequate assistance. *Id.* at 690.

Here, petitioner fails to show either that the stand-in counsel's representation was deficient or that it prejudiced his defense. The record shows that in response to jury questions, stand-in counsel called petitioner's regular defense counsel, and relayed his answers back to the court. RT (5/4/95) at 86-87. It would make no difference if petitioner's regular defense counsel answered the jury questions in person instead of indirectly by telephone. Petitioner's Sixth Amendment right to effective assistance of counsel was not violated by having stand-in counsel appear and deal with the jury questions after the evidence was already in.

### E.    Cumulative Error

Petitioner lumps together the aforementioned claims to assert that the errors cumulatively resulted in a miscarriage of justice. P. & A. in Support of Pet. at 21. "Cumulative error applies where, 'although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant.'" *Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002) (citing *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). Where there is no single constitutional error, "there is nothing to accumulate to a level of a constitutional violation." *Id.*

Petitioner has not shown constitutional error and there is nothing to cumulate. The state courts' rejection of this claimed was not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### 5.    Sufficiency of the Evidence

Petitioner argues that his due process rights were violated because there was insufficient evidence to support his burglary conviction. *See Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Court held that when reviewing whether there was sufficient evidence in support of a verdict to satisfy due process, "the relevant question is whether, after viewing evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

14

at 319.

Under the AEDPA, a federal habeas court applies the standard of *Jackson* with an additional layer of deference. *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). A federal habeas court now must ask whether the operative state court decision reflected an unreasonable application of *Jackson* to the facts of the case. *Id.* at 1275 (quoting 28 U.S.C. § 2254(d)). Section 2254(d)(1) plainly applies to *Jackson* cases; that is, if the state court affirms a conviction under *Jackson*, the federal court must decide whether the state court's application of *Jackson* was objectively unreasonable. *Sarausad v. Porter*, 479 F.3d 671, 667-78 (9th Cir. 2007). By contrast, § 2254(d)(2) is not readily applicable to *Jackson* cases, because a court under *Jackson* makes no "determination of the facts" in the ordinary sense of resolving factual disputes. *Id.* at 678. Rather, the court views the evidence in the light most favorable to the prosecution without resolving any disputed factual questions. *Id.* The federal court's task is not to decide whether the state court unreasonably determined disputed facts; it is, rather, to decide whether the state court unreasonably applied the *Jackson* test. *See id.* at 683 (finding that while state court's characterization of certain testimony was objectively unreasonable, its conclusion that the *Jackson* standard was satisfied was not objectively unreasonable). Thus, a federal court evaluates a state court's resolution of a *Jackson* sufficiency of the evidence claim in all cases under § 2254(d)(1) rather than as a fact issue under § 2254(d)(2). *Id.* at 2561-62.

The thrust of petitioner's argument is that the prosecution never carried its burden of proof in establishing that he entered the Golden's house with the specific intent to commit burglary. Pet'r Supp. Brief at 3. He points to a California case, *People v. Gauze*, 15 Cal. 3d 709 (1975), to argue the proposition that a person has an unconditional possessory right to enter his own home. He asserts that he "was romantically involved with Kim Golden for over 15 years" and that he had ongoing permission or an implied right to enter the home to see his two children whenever he was sober. Pet'r Supp. Brief at 5.

The record indicates, however, that petitioner had no right to enter the home without specific permission. Kim Golden testified that she made it clear the petitioner was not

15

welcome at the house unless he was sober. RT (05/01/95) at 38. There were repeated incidents when Kim Golden refused to allow petitioner entry, thereby dispelling any notion that petitioner had an express or implied absolute right to enter. RT (05/01/95) at 40-43. Patricia Golden, Kim's mother and owner of the house where Kim was staying, also testified that petitioner had no right to enter her home. RT (05/01/95) at 120.

There was sufficient evidence to support the verdict, so the state court's conclusion was not contrary to, nor did it involve an unreasonable application of, clearly established federal law.

### 6. Ineffective Assistance of Appellate Counsel

#### A. Failing to Raise Claims

Petitioner argues that his appellate counsel provided ineffective assistance by failing to raise valid claims. Pet. at 8B-8C. He alleges that counsel failed to pursue a sufficiency of the evidence claim and neglected to submit petitioner's own supplemental brief on the matter. Traverse at 15.

To prevail on an ineffective assistance of appellate counsel claim, petitioner must show that counsel's performance fell below an objective standard of reasonableness and that, but for the errors, petitioner would have prevailed on appeal. *Strickland*, 466 U.S. at 688. Contrary to petitioner's belief, appellate counsel does not have a duty to raise every nonfrivolous claim requested by petitioner. *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). As the Supreme Court held in *Jones v. Barnes*, 463 U.S. 745 (1983), a defendant does not have "a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Id.* at 751. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused the client no prejudice for the same reason – because counsel declined to raise a weak issue. *Miller*, 882 F.2d at 1434.

Here, the voluminous briefs drafted by petitioner's appellate counsel indicate that

16

counsel zealously pursued his defense, and as the court has determined above, the sufficiency of the evidence issue lacked merit.  Defense counsel was not deficient in weeding out the weaker sufficiency of the evidence claim, and that reasonable tactical choice is immune from attack.  *Strickland*, 466 U.S. at 689-92.  The rejection of this claim by the state courts was not contrary to, nor an unreasonable application of, clearly-established Supreme Court authority.

### B.  Failure to Raise Competency Issue

In his last claim petitioner appears to assert that appellate counsel rendered ineffective assistance by not raising or thoroughly exploring the competency issue.  Petitioner cannot prevail on his claim because appellate counsel did raise the competency issue on appeal.  Ex. 3 (petitioner's opening brief) at 28-39.  The California Court of Appeal ultimately upheld the trial court's decision that petitioner was competent at trial.  Ex. 7 at 15-16.

Petitioner next asserts that counsel failed to petition for review and argue the competency issue before the California Supreme Court.  "[T]he right to appointed counsel extends to the first appeal of right, and no further."  *Pennslyvania v. Finley*, 481 U.S. 551, 555 (1987).  The constitutional right to counsel does not apply to an application for a further discretionary review, such as to the California Supreme Court.  *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) (no right to counsel when pursuing discretionary state appeal).  Where no constitutional right to counsel exists, there can be no claim for ineffective assistance.  *See Coleman v. Thompson*, 501 U.S. 722, 757 (1991); *Torna*, 455 U.S. at 587-88 (no ineffective assistance of counsel claim for retained counsel's failure to file timely application for discretionary state appeal when no right to counsel at such proceeding).  Here, petitioner had no constitutional right to counsel on a  discretionary appeal, so there can be no claim for ineffective assistance.  *See id.*

### CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

17

**IT IS SO ORDERED.**

Dated: August 22, 2007.

_____
PHYLLIS J. HAMILTON
United States District Judge

G:\PRO-SE\PJH\HC.01\DUFRI976.RUL.wpd